UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:23-cr-00567-HEA |
| | ) |
| MARSHALL LAMPKIN, | ) |
| | ) |
| Defendant. | ) |

**<u>GOVERNMENT'S SENTENCING MEMORANDUM</u>**

COMES NOW the United States of America, by and through Thomas C. Albus, United States Attorney, and Justin M. Ladendorf, Assistant United States Attorney, for the Eastern District of Missouri, and respectfully recommends that the Court impose a within-Guidelines sentence for Defendant Marshall Lampkin, specifically, 87 months in prison, three years of supervised release, and an order to make full restitution.[1]

**I.   INTRODUCTION**

A jury convicted Lampkin of mail fraud based on his execution of a scheme through which he defrauded the retailer Kohl's of nearly $300,000 worth of online merchandise. According to the (unobjected-to) PSR, Lampkin's total offense level is 25, consisting of a base offense level of 7, with 12 points being added for Lampkin causing more than $250,000 in loss, 2 points being added for Lampkin using sophisticated means and relocating his scheme to different jurisdictions to avoid detection, and 4 points being added for Lampkin enlisting numerous unindicted co-conspirators to assist him with carrying out his scheme. Doc. [144] at ¶¶ 23–32. When Lampkin's total offense

---

[1] As of today, the amount of restitution owed to Kohl's is $301,713.53. Doc. [144] at ¶ 18. If the Court orders that the $241,302.68 worth of Kohl's merchandise seized from Lampkin's storage units be restored to Kohl's, Doc. [147], the amount of restitution owed to Kohl's would be reduced accordingly to $60,410.85.

1

level is paired with his criminal history category of III, the resulting Guidelines range is 70–87 months. *Id.* at ¶¶ 67, 99.

The Government submits that the Section 3553(a) factors support imposing a top-of-the-Guidelines sentence for Lampkin. Lampkin is a longtime fraudster who has no respect for the law. His scheme in this case—defrauding Kohl's of hundreds of thousands of dollars' worth of merchandise—was just one of several similar schemes that he has devised over the years. Indeed, since 2007, Lampkin has been repeatedly arrested, charged, and convicted in state court for various scams through which he sought to enrich himself at another's expense, just as he did in this case. *E.g.*, *id.* at ¶¶ 37–38, 43, 50–52, 54–55, 59, 62, 65. The punishment that Lampkin received in those prior state cases—ranging from probation to a year in jail—did nothing to deter him from continuing to engage in fraudulent (and other) criminal conduct. That is why he deserves a lengthy, 87-month prison sentence in this case. Anything less than that will not reflect the seriousness of his latest offense, promote his respect for the law, or deter him from committing new crimes in the future.

## II. DISCUSSION

### A. Nature, circumstances, and seriousness of the offense

Lampkin's scheme in this case involved a substantial amount of planning and coordination on his part. His scheme also caused the victim—Kohl's—to suffer a sizeable monetary loss and required Kohl's to dedicate a team of employees to investigate and then implement preventive measures to stop him from continuing to steal even more merchandise because he refused to quit after Kohl's requested that he do so.

As part of his scheme, Lampkin used Kohl's Cash to purchase merchandise in a Kohl's store and, within minutes (or in some instances seconds) of making that in-store purchase, he used

the same Kohl's Cash—which was worthless at that point because he had just spent it in the store moments earlier—to make an online merchandise purchase through Kohl's website, with the net result being that he paid nothing for the online merchandise. The reason that Lampkin made the online purchase so quickly after the in-store purchase was because he knew that he had a very short window of time before Kohl's system would register that his Kohl's Cash had already been spent. Thus, each time that Lampkin pulled off his scheme, he had to predetermine how much Kohl's Cash he was going to spend on the in-store purchase so that he could have an online purchase for approximately the same amount ready to go on his cellphone as soon as he approached the checkout counter in the store.

Lampkin also preplanned other aspects of his scheme. Lampkin knew that Kohl's was trying to stop him from double spending Kohl's Cash because Kohl's personnel had requested that he leave stores and talked with him on the phone about its knowledge of his scheme. But rather than abandoning his scheme, Lampkin instead made a conscious effort to try to avoid detection and circumvent Kohl's preventive measures. Once he knew that Kohl's was on to him, he began traveling around the country to different stores where he was less likely to be recognized, started having his confederates make in-store merchandise purchases and returns for him, and quit using his own Kohl's online shopping account to make orders and began using online shopping accounts that were associated with different names and email addresses.

Lampkin devoted nearly all his time to his scheme. In a matter of months, he carried it out more than 100 times at Kohl's stores in over a dozen states from coast to coast to steal hundreds of thousands of dollars' worth of online merchandise. Lampkin did not put in all that effort out of necessity; he did it out of greed. As the evidence at trial established, he sold some of the online merchandise that he stole and had the rest of it—approximately $240,000 worth, the bulk of which

3

consisted of flooring and furniture—stowed away in storage units where it was recovered over a year later during the execution of a federal search warrant.

    **B.  The defendant's history and characteristics / respect for the law / deterrence**

    Lampkin's criminal history dates back nearly 20 years to 2007 when he was 18 years old and includes more than 20 convictions. Doc. [144] at ¶¶ 36–66. While most of Lampkin's past convictions were for misdemeanor offenses, his conduct underlying those convictions reflects a propensity to commit fraud, a pattern of threatening (and in some cases violent) behavior, and a complete lack of respect for the law.

    Between 2007 and 2009, Lampkin was convicted of nine misdemeanor offenses and one felony offense relating to a scheme through which he sold illegal Metrolink tickets. *Id.* at ¶¶ 37–38, 43, 50–51. Not only did Lampkin refuse to stop engaging in that scheme (or trespassing on Metrolink property) despite repeated convictions and jail sentences, but he also threatened and assaulted Metrolink security officers numerous times, including one incident in which he pulled a knife. *Id.* Lampkin eventually switched from his Metrolink scam to various retail theft scams similar in nature to his Kohl's Cash scam. In 2011, Lampkin was convicted and sentenced to probation for stealing from Sam's Club based on a scheme where he used a receipt from a prior merchandise purchase to walk out of the store with the same merchandise reflected on the receipt without paying for it. *Id.* at ¶ 52. Then in 2012, Lampkin was convicted and sentenced to seven days in jail for trespassing at Walmart after he attempted to return a "large amount of merchandise without receipts" following a previous arrest for shoplifting from Walmart. *Id.* at ¶ 54. Thereafter, between 2014 and 2021, Lampkin was convicted three different times and sentenced to jail twice for carrying out a scheme at Walgreens, as part of which he (and others acting at his direction) exploited Walgreens' rewards program to obtain merchandise for free that he later returned for a

cash refund. *Id.* at ¶¶ 55, 59, 62, 65. On at least one occasion, Lampkin threatened a Walgreens employee by telling her that "he was going to wait for her to get off work and was going to kill her." *Id.* at ¶ 59. Like his Kohl's Cash scheme, Lampkin's Walgreens' rewards scheme was also large scale, as a "Walgreens Corporate Investigative Intelligence employee advised the defendant was being monitored by their corporate offices" and had been linked to "approximately 50 different reward cards, but none of the reward cards have his name." *Id.* at ¶ 62. Lampkin currently has five pending cases in four different states relating to the Walgreens' rewards scheme. *Id.* at ¶¶ 70–72, 75, 77.

In addition to the times when Lampkin threatened Metrolink security officers and Walgreens employees, the PSR details multiple other instances in which he engaged in violent behavior. These include an occasion when he slashed someone's tires the day after they pressed charges on him, *id.* at ¶ 70, an allegation that he held a female against her will and raped her and "threatened to kill her and her family if she attempted to leave him," *id.* at ¶ 73, and a pending state felony case in which he is accused of repeatedly striking someone else's vehicle with a hammer, *id.* at ¶ 76.

Lampkin's blatant disrespect for the law showed itself during the pendency of this case as well. He was originally released on bond in October 2023. But his release was short-lived, as his bond was revoked just six months later in March 2024, after he repeatedly violated his conditions, including by engaging in suspicious online activities and failing to abide by his curfew and location monitoring schedule. *Id.* at ¶ 4.

### III.   CONCLUSION

This case is representative of how Lampkin has conducted himself for his entire adult life. His offense conduct and criminal record show that he is someone who lies, cheats, and steals to

5

get what he wants without any regard for the potential repercussions. To this point, he has not faced any serious consequences for his actions—a fine here, a month or two in jail there, and then he picks back up where he left off. Enough is enough. Lampkin's sentence in this case needs to be long enough to send a message to him that, regardless of what he might think, the law applies as equally to him as it does to everyone else. Accordingly, the Government respectfully recommends that the Court impose a top-of-the-Guidelines sentence of 87 months in prison, three years of supervised release, and full restitution.

                          Respectfully submitted,

                          THOMAS C. ALBUS
                          United States Attorney

                          */s/ Justin M. Ladendorf*
                          JUSTIN M. LADENDORF, #68558MO
                          Assistant United States Attorney

## CERTIFICATE OF SERVICE

      I hereby certify that, on December 30, 2025, a copy of the foregoing was mailed postage prepaid United States Mail first class to:

      Marshall Lampkin
      #139831
      Henderson County Detention Center
      P.O. Box 1350
      Henderson, Kentucky 42419

                                          */s/   Justin M. Ladendorf*
                                          JUSTIN M. LADENDORF, #68558MO
                                          Assistant United States Attorney